Electronically Filed 11/12/2013 12:38:50 PM ET

IN THE CIRCUIT COURT DIVISION OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA
CIVIL DIVISION

MONIKA THORNHILL,                                    )
                                                     )
                              Plaintiff,             )
                                                     )
v.                                                   )   CASE NO. 52-2013-CA-004544-XXCICI
                                                     )
PORTFOLIO RECOVERY ASSOCIATES,                       )   DIVISION: 7
LLC,                                                 )
                              Defendant.             )
_____             )

### DEFENDANT'S NOTICE OF FILING SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Defendant, Portfolio Recovery Associates, Inc. ("PRA"), by and through its undersigned counsel, hereby gives notice of filing the attached supplemental authorities in support of Defendant's Motion to Dismiss Amended Complaint filed on August 13, 2013 as listed below:

1. *Greystone Tribeca Acquisition, LLC, et al v. Shirley Ronstrom*, 863 So.2d 473.

2. *Resource Healthare of America, Inc. v. Lee Roy MdKenney, et al*, 940 So.2d 1139.

3. *Harris Schwartzberg, et al v. Kim K. Knobloch, et al*, 98 So.3d 173.

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was furnished via electronic mail through the Florida Courts E-Filing Portal to W. John Gadd, Esquire, 2727 Ulmerton Road, Suite 250, Clearwater, FL 33762 at wjg@mazgadd.com on November 12, 2013.

/s/ R. Marshall Rainey
R. Marshall Rainey, Esquire
Florida Bar No. 794562
R. Frank Springfield, Esquire
Florida Bar No. 10871
**BURR & FORMAN LLP**
201 N. Franklin Street, Suite 3200
Tampa, Florida 33602
(813) 221-2626 (telephone)
(813) 221-7335 (facsimile)
fspringfield@burr.com
mrainey@burr.com
sletts@burr.com
Attorneys for the Defendant, Portfolio Recovery Associates, Inc.

2200177 v1

Westlaw.

863 So.2d 473, 29 Fla. L. Weekly D267
(Cite as: 863 So.2d 473)

C

District Court of Appeal of Florida,
Second District.
GREYSTONE TRIBECA ACQUISITION, L.L.C.;
Stephen Rosenberg; and Rector Holding Corpora-
tion, Appellants,
v.
Shirley RONSTROM, as Personal Representative
of the Estate of James Massa, deceased, Appellee.

No. 2D03-2029.
Jan. 21, 2004.

**Background:** Personal representative of estate of
deceased nursing home resident filed action against
parent limited liability company (LLC) whose
subsidiary LLC owned nursing home, parent LLC's
corporate member, and parent LLC's individual
member, alleging that defendants failed to provide
adequate and appropriate health care to resident.
Defendants moved to dismiss for lack of personal
jurisdiction. The Circuit Court, Pinellas County,
James R. Case, J., denied motion, and defendants
appealed.

**Holdings:** The District Court of Appeal, Wallace,
J., held that:
[1] presence of subsidiary LLC in state did not sub-
ject parent LLC to long-arm jurisdiction, and
[2] defendants lacked sufficient contacts with state
to satisfy due process requirements for long-arm
jurisdiction.

Reversed and remanded with directions.

West Headnotes

[1] Courts 106 ⟶13.2

106 Courts
 106I Nature, Extent, and Exercise of Jurisdic-
tion in General
  106I(A) In General
   106k13.1 Actions by or Against Nonresid-

ents, Personal Jurisdiction In; " Long-Arm " Juris-
diction
   106k13.2 k. In general. Most Cited
Cases
 (Formerly 106k12(2.1))
 District Court of Appeal is required to strictly
construe long-arm statute. West's F.S.A. §
48.193(1)(a).

[2] Courts 106 ⟶13.6(9)

106 Courts
 106I Nature, Extent, and Exercise of Jurisdic-
tion in General
  106I(A) In General
   106k13.1 Actions by or Against Nonresid-
ents, Personal Jurisdiction In; " Long-Arm " Juris-
diction
    106k13.6 Agents, Representatives, and
Other Third Parties, Contacts and Activities of as
Basis for Jurisdiction
     106k13.6(9) k. Related or affiliated
entities; parent and subsidiary. Most Cited Cases
 (Formerly 101k665(1))

Courts 106 ⟶13.6(8)

106 Courts
 106I Nature, Extent, and Exercise of Jurisdic-
tion in General
  106I(A) In General
   106k13.1 Actions by or Against Nonresid-
ents, Personal Jurisdiction In; " Long-Arm " Juris-
diction
    106k13.6 Agents, Representatives, and
Other Third Parties, Contacts and Activities of as
Basis for Jurisdiction
     106k13.6(8) k. Shareholders, mem-
bers, or other individual owners of entities. Most
Cited Cases
 (Formerly 106k12(2.25))
 Presence of subsidiary limited liability com-
pany (LLC) that owned and operated nursing home
did not subject parent LLC and its corporate and in-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

863 So.2d 473, 29 Fla. L. Weekly D267
(Cite as: 863 So.2d 473)

dividual members to long-arm jurisdiction of Florida courts in action by personal administrator of estate of deceased nursing home resident for failure to provide adequate and appropriate health care. West's F.S.A. § 48.193(1)(a).

[3] Constitutional Law 92 ⚖══3965(5)

92 Constitutional Law
   92XXVII Due Process
      92XXVII(E) Civil Actions and Proceedings
         92k3961 Jurisdiction and Venue
            92k3965 Particular Parties or Circumstances
               92k3965(5) k. Services and service providers. Most Cited Cases
    (Formerly 92k305(6), 92k305(5))

Courts 106 ⚖══13.6(9)

106 Courts
   106I Nature, Extent, and Exercise of Jurisdiction in General
      106I(A) In General
         106k13.1 Actions by or Against Nonresidents, Personal Jurisdiction In; " Long-Arm " Jurisdiction
            106k13.6 Agents, Representatives, and Other Third Parties, Contacts and Activities of as Basis for Jurisdiction
               106k13.6(9) k. Related or affiliated entities; parent and subsidiary. Most Cited Cases
    (Formerly 101k665(1))

Courts 106 ⚖══13.6(8)

106 Courts
   106I Nature, Extent, and Exercise of Jurisdiction in General
      106I(A) In General
         106k13.1 Actions by or Against Nonresidents, Personal Jurisdiction In; " Long-Arm " Jurisdiction
            106k13.6 Agents, Representatives, and Other Third Parties, Contacts and Activities of as Basis for Jurisdiction

106k13.6(8) k. Shareholders, members, or other individual owners of entities. Most Cited Cases
    (Formerly 106k12(2.25))
   Parent limited liability company (LLC) whose subsidiary LLC owned nursing home in state, parent LLC's corporate member, and parent LLC's individual member lacked sufficient contacts with state to satisfy due process requirements for invoking jurisdiction under long-arm statute, in action by personal administrator of estate of deceased nursing home resident for failure to provide adequate and appropriate health care, where parent LLC and corporate member did not maintain offices, agents, or employees in Florida, individual member was not resident of state and did not have office in state, and LLC only had contact with state as parent of subsidiary LLC. U.S.C.A. Const.Amend. 14; West's F.S.A. § 48.193(1)(a).

*474 Scott A. Mager and Elaine J. LaFlamme of Mager Shafer, Fort Lauderdale, for Appellants.

Robert C. Widman and James E. Keim of Morris, Widman & Keim, P.A., Venice, for Appellee.

WALLACE, Judge.
   Greystone Tribeca Acquisition, L.L.C., Stephen Rosenberg, and Rector Holding Corporation (the Appellants) argue that the trial court erred when it denied their motion to dismiss for lack of personal jurisdiction in a nonfinal order. Because the appellee, Shirley Ronstrom, failed to establish jurisdiction under Florida's long-arm statute, we reverse.

   Ronstrom, as personal representative of the estate of James Massa, filed a two-count complaint against several defendants, including the Appellants, alleging that the defendants failed to provide adequate and appropriate health care to James Massa while he was a resident at the Colonial Care Center located in Pinellas County, Florida. In her complaint, Ronstrom alleged that the Appellants "established, conducted business as, managed, *475 operated, owned, maintained, and/or assumed

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

863 So.2d 473, 29 Fla. L. Weekly D267
(Cite as: 863 So.2d 473)

Page 3

liability for Colonial Care Center." The Appellants filed a motion to dismiss and asserted that they were not subject to the jurisdiction of the Florida court. Each Appellant submitted an individual affidavit. Greystone's affidavit recited that it is a Delaware limited liability company; that Greystone has not conducted business in Florida; that it has not appointed an agent for service of process in Florida; that it has no office or place of business in Florida; and that it has no employees in Florida. Rosenberg's affidavit stated that he is a New York resident who is a member of Greystone; that he is not directly involved in the daily operations of Colonial Care Center; and that he has no office or place of business in Florida. Rector's affidavit asserted that it is a New York corporation; that it is not qualified to do business in Florida; that it has no office or place of business in Florida; that it has no employees in Florida; and that it has neither incurred nor paid taxes to Florida. In response, Ronstrom filed an affidavit of James E. Keim, who had requested records from the Agency for Healthcare Administration, and Ronstrom attached the records received as a result of Keim's request. These records indicate only that Greystone is a member (having at least a five percent interest) of defendant Colonial Care NH, L.L.C. (the owner, operator, and licensee of Colonial Care Center) and that Rosenberg and Rector were members of Greystone.

[1] Our standard of review on the issue of personal jurisdiction over a nonresident defendant is de novo. *See Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So.2d 582 ( Fla.2000). Additionally, we are required to strictly construe Florida's long-arm statute. *See Esberger v. First Fla. Bus. Consultants, Inc.*, 338 So.2d 561 ( Fla. 2d DCA 1976).

[2] The Florida Supreme Court in *Venetian Salami Co. v. Parthenais*, 554 So.2d 499 ( Fla .1989), established the procedure to be followed in cases in which the plaintiff asserts that the trial court has jurisdiction by virtue of Florida's long-arm statute. First, "the plaintiff may seek to obtain

jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts." *Id.* at 502. If the defendant wishes to contest the basis for jurisdiction or to raise a contention of minimum contacts, he must file affidavits in support of his position. *Id.* The burden is then on the plaintiff to submit an affidavit proving that jurisdiction may be obtained. *Id.* If the affidavits can be harmonized, the court can make a decision based upon facts which are undisputed. *Id.* at 502-03 (citing *Elmex Corp. v. Atl. Fed. Sav. & Loan Ass'n of Fort Lauderdale*, 325 So.2d 58 (Fla. 4th DCA 1976)). The court's decision must resolve (1) whether there are sufficient jurisdictional facts to bring the action within the long-arm statute, and (2) whether the nonresident defendant has sufficient minimum contacts with Florida to satisfy due process requirements. *Id.; see also Kin Yong Lung Indus. Co. v. Temple*, 816 So.2d 663 (Fla. 2d DCA 2002).

The allegations of Ronstrom's complaint established that the only basis claimed for jurisdiction was under section 48.193(1)(a), Florida Statutes (2001), which provides as follows:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

*476 (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

Although Ronstrom complied with the *Venetian Salami* procedure to establish jurisdiction by filing an affidavit, the affidavit establishes only that Greystone was a parent limited liability company whose subsidiary limited liability company, Colonial Care Center NH, L.L.C., owned the Colonial Care Center and that Rosenberg and Rector were

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

863 So.2d 473, 29 Fla. L. Weekly D267
(Cite as: 863 So.2d 473)

members of Greystone. Florida decisions have held that the presence of a subsidiary corporation within Florida is not enough to subject a non-Florida parent corporation to long-arm jurisdiction within this state. *See Capital One Fin. Corp. v. Miller,* 709 So.2d 639 ( Fla. 2d DCA 1998); *Phillips v. Orange Co.,* 522 So.2d 64 ( Fla. 2d DCA 1988); *Qualley v. Int'l Air Serv. Co.,* 595 So.2d 194 ( Fla. 3d DCA 1992); *McLean Fin. Corp. v. Winslow Loudermilk Corp.,* 509 So.2d 1373 ( Fla. 5th DCA 1987). Thus Ronstrom's reliance upon Greystone's ownership of the limited liability company that owns the Colonial Care Center and Rosenberg's and Rector's interest in Greystone is unavailing and does not establish that the Appellants conduct business in Florida so as to subject them to the long-arm jurisdiction of Florida courts pursuant to section 48.193(1)(a).

[3] Furthermore, assuming the undisputed jurisdictional facts fell within section 48.193(1)(a), the Appellants must have sufficient minimum contacts with Florida to satisfy due process requirements. *See Venetian Salami,* 554 So.2d at 502. The test is whether their conduct is such that they "should reasonably anticipate being haled into court" in Florida. *Id.* at 500 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Greystone's and Rector's affidavits establish that they are a foreign limited liability company and a corporation, respectively, that do not maintain offices, agents, or employees in Florida. Rosenberg's affidavit establishes that he is not a resident of Florida nor does he have an office in the state. Ronstrom's affidavit does not offer any evidence in response that Greystone ever had contact with Florida other than as the parent of the subsidiary that owned the Colonial Care Center. The only contact Rosenberg and Rector have, as revealed in Ronstrom's affidavit, was as members of Greystone. These limited contacts are insufficient to establish that the Appellants could reasonably anticipate being haled into a Florida court.

Because the undisputed facts do not demonstrate a basis for jurisdiction under Florida's long-arm statute, we reverse and remand with directions that the trial court vacate its prior order and dismiss Ronstrom's claims against the Appellants for lack of personal jurisdiction.

Reversed and remanded with directions.

CASANUEVA and COVINGTON, JJ., Concur.

Fla.App. 2 Dist.,2004.
Greystone Tribeca Acquisition, L.L.C. v. Ronstrom
863 So.2d 473, 29 Fla. L. Weekly D267

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

940 So.2d 1139, 31 Fla. L. Weekly D2138
(Cite as: 940 So.2d 1139)

**H**

District Court of Appeal of Florida,
Second District.
RESOURCE HEALTHCARE OF AMERICA,
INC., f/k/a RHA/Home Office, Inc., Appellant,
v.
Lee Roy McKINNEY, as Personal Representative
of the Estate of Lorene McKinney; and RHA/
Florida Operations, Inc.; Healthprime, Inc.; HP/
Management Group, Inc.; Dixie Healthcare In-
vestors, L.P.; HP/Hyde, Inc.; Delta Healthgroup,
Inc.; Stella Pappas; Janet Vincenti; Tomiko Trigo;
and Joan Eleanor Baldwin; (as to Glen Oaks Health
Care), Appellees.

No. 2D05–5754.
Aug. 11, 2006.
Rehearing Denied Oct. 13, 2006.

**Background:** Personal representative of decedent's
estate filed action against parent corporation of
nursing home licensee and others, asserting claims
related to the care and treatment while decedent
was at nursing home. Parent corporation filed mo-
tion to dismiss for lack of personal jurisdiction. The
Circuit Court, Pinellas County, Walt Logan, J.,
denied the motion, and parent corporation appealed.

**Holding:** The District Court of Appeal, Second
District, Salcines, J., held that evidence did not es-
tablish long-arm jurisdiction over parent corpora-
tion.

Reversed and remanded with directions.

West Headnotes

**[1] Appeal and Error 30 ⇐893(1)**

30 Appeal and Error
  30XVI Review
    30XVI(F) Trial De Novo
      30k892 Trial De Novo
        30k893 Cases Triable in Appellate
Court
          30k893(1) k. In general. Most Cited
Cases
    The standard of review on the issue of personal
jurisdiction over a foreign corporation is de novo.

**[2] Courts 106 ⇐35**

106 Courts
  106I Nature, Extent, and Exercise of Jurisdiction
in General
    106I(A) In General
      106k34 Presumptions and Burden of
Proof as to Jurisdiction
        106k35 k. In general. Most Cited Cases

**Courts 106 ⇐39**

106 Courts
  106I Nature, Extent, and Exercise of Jurisdiction
in General
    106I(A) In General
      106k39 k. Determination of questions of
jurisdiction in general. Most Cited Cases
    When a nonresident defendant moves to dis-
miss a complaint for lack of long-arm jurisdiction
and files an affidavit or other sworn proof, the bur-
den is placed on the plaintiff to prove by affidavit
or other sworn proof the basis upon which jurisdic-
tion may be obtained; if the affidavits conflict, the
trial court should hold a limited evidentiary hearing
to resolve the disputed issues of fact and to determ-
ine the jurisdiction issue.

**[3] Constitutional Law 92 ⇐3965(3)**

92 Constitutional Law
  92XXVII Due Process
    92XXVII(E) Civil Actions and Proceedings
      92k3961 Jurisdiction and Venue
        92k3965 Particular Parties or Circum-
stances
          92k3965(3) k. Business, business
organizations, and corporations in general. Most

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

940 So.2d 1139, 31 Fla. L. Weekly D2138
(Cite as: 940 So.2d 1139)

Cited Cases
   (Formerly 92k305(5))

Courts 106 ☜13.3(11)

106 Courts
   106I Nature, Extent, and Exercise of Jurisdiction
in General
      106I(A) In General
         106k13.1 Actions by or Against Nonresid-
ents, Personal Jurisdiction In; "Long-Arm" Juris-
diction
            106k13.3 Factors Considered in Gen-
eral
               106k13.3(9) Commercial Contacts
and Activities; Contracts and Transactions
                  106k13.3(11) k. Business con-
tacts and activities; transacting or doing business.
Most Cited Cases
   (Formerly 106k12(2.5))
   Once the court determines that the facts are
sufficient to bring a nonresident defendant within
the reach of the long-arm statute, the court must
also consider whether the defendant has sufficient
minimum contacts with the state so that the exer-
cise of jurisdiction would not offend traditional no-
tions of fair play and substantial justice; this re-
quires the court to determine whether the defendant
has availed itself of the privilege of doing business
in Florida or has committed acts with an effect in
Florida such that it would anticipate being haled in-
to Florida courts.

[4] Courts 106 ☜13.6(9)

106 Courts
   106I Nature, Extent, and Exercise of Jurisdiction
in General
      106I(A) In General
         106k13.1 Actions by or Against Nonresid-
ents, Personal Jurisdiction In; "Long-Arm" Juris-
diction
            106k13.6 Agents, Representatives, and
Other Third Parties, Contacts and Activities of as
Basis for Jurisdiction
               106k13.6(9) k. Related or affiliated

entities; parent and subsidiary. Most Cited Cases
   (Formerly 101k665(1))
   Deposition testimony, including testimony of
nursing home's former administrator that she had
never heard of parent corporation and could not
testify concerning any of its activities, did not es-
tablish that foreign parent corporation of Florida
nursing home licensee engaged in activity within
Florida such that it would fall within the purview of
Florida's long-arm jurisdiction statute in connection
with action asserting claims related to care and
treatment at nursing home; testimony and affidavits
did not establish that parent corporation ever estab-
lished, conducted, managed, operated, or main-
tained nursing home, that parent corporation oper-
ated, conducted, engaged in, or carried on a busi-
ness or business venture in Florida or had an office
or agency in the state for any cause of action arising
from those acts, or that parent corporation engaged
in substantial and not isolated activity within state.
West's F.S.A. § 48.193(1)(a, b), (2).

[5] Corporations and Business Organizations
101 ☜1078(3)

101 Corporations and Business Organizations
   101II Disregarding Corporate Entity; Piercing
Corporate Veil
      101k1057 Particular Occasions for Determin-
ing Corporate Entity
         101k1078 Remedies and Procedure
            101k1078(3) k. Jurisdiction over
shareholders, directors, or officers of foreign cor-
porations. Most Cited Cases
   (Formerly 101k1.6(9))

Courts 106 ☜13.6(9)

106 Courts
   106I Nature, Extent, and Exercise of Jurisdiction
in General
      106I(A) In General
         106k13.1 Actions by or Against Nonresid-
ents, Personal Jurisdiction In; "Long-Arm" Juris-
diction
            106k13.6 Agents, Representatives, and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

940 So.2d 1139, 31 Fla. L. Weekly D2138
(Cite as: 940 So.2d 1139)

Other Third Parties, Contacts and Activities of as
Basis for Jurisdiction
        106k13.6(9) k. Related or affiliated
entities; parent and subsidiary. Most Cited Cases
    (Formerly 101k665(1))
    Although the mere presence of a subsidiary in
Florida, without more, does not subject a non-
Florida corporate parent to long-arm jurisdiction,
when a parent exercises sufficient control over a
subsidiary, that control establishes an agency and
supports jurisdiction. West's F.S.A. § 48.193.

*1140 J. Craig Knox and George T. Levesque of
Andrews, Crabtree, Knox & Andrews, LLP, Talla-
hassee, for Appellant.

Susan B. Morrison of Law Offices of Susan B.
Morrison, P.A., and Blair N. Mendes of Wilkes &
McHugh, P.A., Tampa, for Appellee Lee Roy
McKinney, as Personal Representative of the Estate
of Lorene McKinney.

No appearance for RHA/Florida Operations, Inc.;
Healthprime, Inc.; HP/Management Group, Inc.;
Dixie Healthcare Investors, L.P.; HP/Hyde, Inc.;
Delta Healthgroup, Inc.; Stella Pappas; Janet Vin-
centi; Tomiko Trigo; and Joan Eleanor Baldwin; (as
to Glen Oaks Health Care).

SALCINES, Judge.
    Resource Healthcare of America, Inc., f/k/a
RHA/Home Office, Inc. (Resource Healthcare), ap-
peals a nonfinal order denying its motion to dismiss
for lack of personal jurisdiction. We reverse.

    [1] Lee Roy McKinney, as personal represent-
ative of the estate of Lorene McKinney, filed suit
against multiple parties including Resource Health-
care, a foreign corporation, asserting claims related
to the care and treatment of Lorene McKinney
while she was at Glen Oaks Health Care, a nursing
home located in Florida. Resource Healthcare
moved to dismiss the complaint for lack of personal
jurisdiction and filed the affidavit of Resource
Healthcare's president, Bryant Coats, in support of

its motion. In response to Resource Healthcare's
motion and affidavit, Mr. McKinney filed tran-
scripts from two depositions. The trial court con-
ducted a hearing on Resource Healthcare's motion
to dismiss, took the matter under advisement, and
subsequently entered an order that simply denied
the motion without discussing the rationale leading
to the denial. That order is the subject of Resource
Healthcare's appeal.

    "Our standard of review on the issue of person-
al jurisdiction over a foreign corporation is de
novo." Camp Illahee Investors, Inc. v. Blackman,
870 So.2d 80, 83 (Fla. 2d DCA 2003). The determ-
ination of whether the trial court has personal juris-
diction over Resource Healthcare turns on whether
there are sufficient jurisdictional facts to bring Mr.
McKinney's action against Resource Healthcare
within the purview of the long-arm statute. Review-
ing this matter de novo, we conclude that Mr.
McKinney failed to establish a basis for the Florida
court to acquire long-arm jurisdiction over Re-
source Healthcare.

    [2][3] When a nonresident defendant moves to
dismiss a complaint for lack of long-arm jurisdic-
tion and files an affidavit "or other sworn proof,"
the burden is placed on the plaintiff to prove by af-
fidavit or other sworn proof the basis upon which
jurisdiction may be obtained. Venetian Salami Co.
v. Parthenais, 554 So.2d 499, 502–03 (Fla.1989)
(referring to affidavit); Kin Yong Lung Indus. Co. v.
Temple, 816 So.2d 663, 666 (Fla. 2d DCA 2002)
(referring to other sworn proof). If the affidavits
*1141 conflict, the trial court should hold a limited
evidentiary hearing to resolve the disputed issues of
fact and to determine the jurisdiction issue. Vene-
tian Salami, 554 So.2d at 503. Once the court de-
termines that the facts are sufficient to bring the de-
fendant within the reach of the long-arm statute, the
court must also consider whether the defendant has
sufficient minimum contacts with the state so that
the exercise of jurisdiction would not offend tradi-
tional notions of fair play and substantial justice.
Id. This requires the court to determine whether the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

940 So.2d 1139, 31 Fla. L. Weekly D2138
(Cite as: 940 So.2d 1139)

defendant has availed itself of the privilege of doing business in Florida or has committed acts with an effect in Florida such that it would anticipate being haled into Florida courts. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In the present case, we do not reach the issue of minimum contacts because Mr. McKinney did not establish a statutory basis for long-arm jurisdiction.

Mr. McKinney had the burden of alleging facts which, if proven to be true, would support specific personal jurisdiction over Resource Healthcare under section 48.193(1), Florida Statutes (2003) (conferring jurisdiction for any cause of action arising from the "doing of" specifically enumerated acts in Florida), or general personal jurisdiction under section 48.193(2) (conferring jurisdiction over parties who engage in substantial and not isolated activity within Florida). *See Venetian Salami,* 554 So.2d at 502. The jurisdictional allegations contained in the operative complaint provided:

9. Defendant, RESOURCE HEALTHCARE OF AMERICA, INC. f/k/a RHA/Home Office, Inc. (hereinafter "RESOURCE HEALTHCARE OF AMERICA, INC."), is a Tennessee corporation, which is doing business in Florida.

....

16. Defendant, RESOURCE HEALTHCARE OF AMERICA, INC., established, conducted, managed, operated, or maintained GLEN OAKS HEALTH CARE during LORENE McKINNEY'S period of residency prior to May 15, 2001, and is a licensee pursuant to Chapter 400, Florida Statutes (2000).

....

25. Defendant, RESOURCE HEALTHCARE OF AMERICA, is an entity that operated the nursing home during LORENE McKINNEY'S residency on or after May 15, 2001, and as such owed a duty to LORENE McKINNEY to exercise reas-

onable care in the operation of the nursing home according to § 400.023(3), Florida Statutes (2001).

Additionally, Mr. McKinney alleged various tort claims in the complaint all of which relied on the allegation that Resource Healthcare owed a duty to exercise reasonable care because it was an entity that established, conducted, managed, operated, or maintained Glen Oaks Health Care during the specified periods of time.

In response to those allegations, Resource Healthcare filed the affidavit of Mr. Coats in which he averred that:

2. Resource Healthcare is a non-profit corporation organized under the laws of the State of Tennessee and maintains its corporate offices in Atlanta, Georgia. Resource Healthcare does not now and has never previously maintained an office or conducted any business in the State of Florida.

3. Resource Healthcare has never qualified, or applied to qualify, as a foreign corporation with the Secretary of State of Florida. Resource Healthcare does not own and has never held or owned real or personal property in the State of Florida.

*1142 4. Resource Healthcare does not maintain a registered agent for purposes of service of process in the State of Florida.

5. Resource Healthcare has not and has never been the licensee or manager of Glen Oaks Health Care, pursuant to § 400.022, Florida Statutes.

6. Resource Healthcare never established, conducted, managed, operated, or maintained Glen Oaks Health Care at any time.

7. Resource Healthcare is the sole member of RHA/Florida Operations, Inc., a Florida non-profit corporation, which was the licensed operat-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

940 So.2d 1139, 31 Fla. L. Weekly D2138
(Cite as: 940 So.2d 1139)

Page 5

or of Glen Oaks Health Care and which was the provider of the health care services at that facility, and the employer of the employees who worked at that facility.

8. Resource Healthcare has neither provided, nor managed, nor supervised the care and treatment of residents, including Lorene McKinney, at Glen Oaks Health Care at any time.

9. Resource Healthcare has neither billed nor received money from or on behalf of residents at Glen Oaks Health Care, including Lorene McKinney.

10. Resource Health has never had possession or control of any medical records concerning Lorene McKinney and her residency at Glen Oaks Health Care at any time.

Mr. Coats' affidavit clearly contradicted the jurisdictional allegations in the complaint. Hence, the burden of proving that personal jurisdiction existed was placed on Mr. McKinney. *See Pezmell v. Doolan,* 722 So.2d 881 (Fla. 2d DCA 1998) (holding that burden had shifted to plaintiffs to establish jurisdiction but they had failed to satisfy burden; plaintiffs' complaint made conclusory allegations sufficient to raise jurisdiction and defendant's affidavit, with equally conclusory allegations, supported his claim of no jurisdiction). This required Mr. McKinney to provide sworn proof establishing sufficient facts to bring Resource Healthcare within the reach of the long-arm statute. The sworn testimony in the depositions filed by Mr. McKinney failed to establish those facts under either a theory of specific jurisdiction pursuant to section 48.193(1) (by doing certain acts in Florida), or a theory of general jurisdiction pursuant to section 48.193(2) (by engaging in substantial and not isolated activity within Florida).

A review of Mr. McKinney's complaint, at best, implicates only three statutory bases to confer long-arm jurisdiction over Resource Healthcare: (1) pursuant to section 48.193(1)(b) based on allegations that Resource Healthcare committed torts in Florida; (2) pursuant to section 48.193(1)(a) based on allegations that Mr. McKinney's claims arose from a business that Resource Healthcare was operating, conducting, engaging in, or carrying on in Florida; and (3) pursuant to section 48.193(2) based on allegations that Resource Healthcare operated Glen Oaks Health Care, i.e., engaged in substantial and not isolated activity within Florida.

The deposition testimony was that of Mr. Coats and Stella Pappas. Mr. Coats' deposition testimony revealed that in addition to being the president of Resource Healthcare, at various times he was also the vice president and chief executive officer of RHA/Florida Operations, Inc. Resource Healthcare was the parent entity of RHA/Florida Operations as well as other affiliated companies. Mr. Coats affirmed that RHA/Florida Operations was the licensee of Glen Oaks Health Care. RHA/Florida Operations used HP Management Group, Inc., a Healthprime affiliated company, as the management company in the course of operating its facilities. Mr. Coats was not otherwise affiliated with *1143 Healthprime. Ms. Pappas was the former administrator of Glen Oaks Health Care during the pertinent periods and an employee of Healthprime, the manager of Glen Oaks Health Care. Ms. Pappas had never heard of Resource Healthcare and could not testify concerning any of its activities. The foregoing deposition testimony failed to demonstrate that Resource Healthcare fell within the purview of Florida's long-arm statute.

[4] Again, the tort claims against Resource Healthcare assumed that it "established, conducted, managed, operated, or maintained" Glen Oaks Health Care during Ms. McKinney's residency and, therefore, owed a duty to Ms. McKinney to exercise reasonable care in the operation of the nursing home. The affidavit refuted the allegation that Resource Healthcare ever established, conducted, managed, operated, or maintained Glen Oaks Health Care, and the deposition testimony did not establish otherwise. Thus, Mr. McKinney failed to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

940 So.2d 1139, 31 Fla. L. Weekly D2138
(Cite as: 940 So.2d 1139)

establish long-arm jurisdiction over Resource Healthcare under section 48.193(1)(b).

The jurisdictional reach of section 48.193(1)(a) was equally unavailing in the present matter. That section confers jurisdiction over parties who operate, conduct, engage in, or carry on a business or business venture in this state or have an office or agency in this state for any cause of action arising from the "doing of" those acts. The deposition testimony failed to establish that Resource Healthcare did any of the foregoing acts. Likewise, the deposition testimony failed to establish that Resource Healthcare engaged in substantial and not isolated activity within Florida as required in order to bring it within the ambit of section 48.193(2).

[5] Resource Healthcare was the nonprofit "parent" corporation of RHA/Florida Operations, its nonprofit subsidiary that was the licensee of the Glen Oaks Health Care Center. Ownership of a resident subsidiary corporation by an out-of-state parent corporation, without more, has been repeatedly deemed insufficient to meet the requirements of section 48.193. *See Greystone Tribeca Acquisition, L.L.C. v. Ronstrom,* 863 So.2d 473, 476 (Fla. 2d DCA 2004) (holding that out-of-state parent corporation's resident subsidiary which was the owner, operator, and licensee of a nursing home located within the state did not constitute activity sufficient to grant personal jurisdiction over parent corporation, even though parent corporation was disclosed on state licensure filings); *Capital One Fin. Corp. v. Miller,* 709 So.2d 639, 640 (Fla. 2d DCA 1998) (finding foreign holding company's ownership of subsidiary within the state insufficient to satisfy the long-arm statute); *Walt Disney Co. v. Nelson,* 677 So.2d 400, 403 (Fla. 5th DCA 1996) (holding parent corporation's ownership of a subsidiary which conducted business in the state, without more, insufficient to establish long-arm jurisdiction); *Qualley v. Int'l Air Serv. Co.,* 595 So.2d 194, 196 (Fla. 3d DCA 1992) (holding requirements of section 48.193 were not met for parent corporation which owned a subsidiary actively involved in business in

Florida, even though parent corporation also performed certain accounting and payroll functions for its subsidiary).[FN1]

> FN1. We note that although the mere presence of a subsidiary in Florida, without more, does not subject a non-Florida corporate parent to long-arm jurisdiction, when a parent exercises sufficient control over a subsidiary, that control establishes an agency and supports jurisdiction. *See Enic, PLC v. F.F. South & Co.,* 870 So.2d 888 (Fla. 5th DCA 2004). In the present case, McKinney did not present an agency theory and did not offer sworn proof that would establish jurisdiction based on agency.

*1144 Accordingly, because Mr. McKinney failed to establish a basis for the Florida court to acquire long-arm jurisdiction over Resource Healthcare, we reverse and remand with directions to the trial court to grant Resource Healthcare's motion to dismiss.

Reversed and remanded with directions.

NORTHCUTT and LaROSE, JJ., Concur.

Fla.App. 2 Dist.,2006.
Resource Healthcare of America, Inc. v. McKinney
940 So.2d 1139, 31 Fla. L. Weekly D2138

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

98 So.3d 173, 37 Fla. L. Weekly D2157
(Cite as: 98 So.3d 173)

**H**

District Court of Appeal of Florida,
Second District.
Harris SCHWARTZBERG; Harris Schwartzberg
Trust; Steven Schwartzberg Trust; Judith
Schwartzberg Trust; Schwartzberg Descendants
Trust; Harris Schwartzberg 2003 Trust; Steven
Schwartzberg 2003 Trust; Hs Midwest Trust # 1; Js
Midwest Trust; Fam Midwest Trust; Judith
Schwartzberg 2003 Trust; Harris Schwartzberg
2004 Gst Trust 1; Harris Schwartzberg 2004 Gst
Trust 2; Judith Schwartzberg 2004 Gst Trust 1; Ju-
dith Schwartzberg 2004 Gst Trust 2; Schwartzberg
Family 2004 Gst Trust; Schwartzberg 2004 Des-
cendants Trust; Js National Trust; Hs National
Trust # 1; Hs National Trust # 2; Fam National
Trust; and Maxwell Stolzberg, Appellants,
v.
Kim K. KNOBLOCH, as Personal Representative
of the Estate of William Knobloch, Deceased, Ap-
pellee.

No. 2D11–2867.
Sept. 7, 2012.

**Background:** Estate of deceased nursing home res-
ident brought action against certain nonresident in-
dividuals and trusts having indirect ownership in-
terests in nursing home's operating and manage-
ment companies, alleging negligence, breach of fi-
duciary duty, and statutory violations relating to al-
leged deficiencies in resident's care during his res-
idence at the home. Defendants moved to dismiss
for lack of personal jurisdiction. The Circuit
Court, Polk County, J. Michael McCarthy, J.,
denied motions. Defendants appealed.

**Holding:** On rehearing, the District Court of Ap-
peal, Wallace, J., held that trial court lacked specif-
ic or general jurisdiction over defendants under
long-arm statute.

Reversed and remanded with directions.

West Headnotes

**[1] Courts 106 ⌖13.3(8)**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdic-
tion in General
        106I(A) In General
            106k13.1 Actions by or Against Nonresid-
ents, Personal Jurisdiction In; " Long-Arm " Juris-
diction
                106k13.3 Factors Considered in Gen-
eral
                    106k13.3(5) Connection with Litig-
ation
                        106k13.3(8) k. Related contacts
and activities; specific jurisdiction. Most Cited
Cases
    Specific jurisdiction may be asserted upon
nonresident persons or entities in accordance with
long-arm statute where the cause of action arises
from that person's business activities in Florida,
i.e., where "connexity" exists. West's F.S.A. §
48.193(1)(a).

**[2] Constitutional Law 92 ⌖3964**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(E) Civil Actions and Proceedings
            92k3961 Jurisdiction and Venue
                92k3964 k. Non-residents in general.
Most Cited Cases
    If there is a basis for specific jurisdiction un-
der long-arm statute, the plaintiff must still estab-
lish that the nonresident defendant has sufficient
minimum contacts with the State of Florida to sat-
isfy due process of law; the test is whether the de-
fendant's conduct and connection with the forum
State are such that he should reasonably anticipate
being haled into court there. U.S.C.A.
Const.Amend. 14; West's F.S.A. § 48.193(1).

**[3] Courts 106 ⌖13.3(7)**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

98 So.3d 173, 37 Fla. L. Weekly D2157
(Cite as: 98 So.3d 173)

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
        106I(A) In General
            106k13.1 Actions by or Against Nonresidents, Personal Jurisdiction In; "Long-Arm" Jurisdiction
                106k13.3 Factors Considered in General
                    106k13.3(5) Connection with Litigation
                    106k13.3(7) k. Unrelated contacts and activities; general jurisdiction. Most Cited Cases
    The general jurisdiction section of long-arm statute does not require connexity between a nonresident defendant's activities and the cause of action. West's F.S.A. § 48.193(2).

**[4] Constitutional Law 92 ☞3964**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(E) Civil Actions and Proceedings
            92k3961 Jurisdiction and Venue
                92k3964 k. Non-residents in general. Most Cited Cases
    If the nonresident defendant's activities meet the requirements of the general jurisdiction section of long-arm statute, the due process requirement of minimum contacts is fulfilled. U.S.C.A. Const.Amend. 14; West's F.S.A. § 48.193(2).

**[5] Courts 106 ☞32.5(2)**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
        106I(A) In General
            106k31 Jurisdiction to Be Shown by Record
                106k32.5 Jurisdiction of the Person
                    106k32.5(2) k. Allegations, pleadings, and affidavits. Most Cited Cases

**Courts 106 ☞35**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
        106I(A) In General
            106k34 Presumptions and Burden of Proof as to Jurisdiction
                106k35 k. In general. Most Cited Cases

**Courts 106 ☞39**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
        106I(A) In General
            106k39 k. Determination of questions of jurisdiction in general. Most Cited Cases
    A nonresident defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his position, and the burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained; if the affidavits can be harmonized, the court can resolve the jurisdiction issue based upon the undisputed facts, but if not, the trial court must hold a limited evidentiary hearing in order to determine the jurisdiction issue.

**[6] Appeal and Error 30 ☞893(1)**

30 Appeal and Error
    30XVI Review
        30XVI(F) Trial De Novo
            30k892 Trial De Novo
                30k893 Cases Triable in Appellate Court
                    30k893(1) k. In general. Most Cited Cases
    Appellate court's standard of review on orders finding personal jurisdiction over a nonresident defendant is de novo.

**[7] Courts 106 ☞13.2**

106 Courts

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

98 So.3d 173, 37 Fla. L. Weekly D2157
(Cite as: 98 So.3d 173)

Page 3

106I Nature, Extent, and Exercise of Jurisdiction
in General
    106I(A) In General
       106k13.1 Actions by or Against Nonresidents, Personal Jurisdiction In; "Long-Arm" Jurisdiction
          106k13.2 k. In general. Most Cited Cases

    Florida's long arm statute must be strictly construed. West's F.S.A. § 48.193.

**[8] Courts 106 ⟾13.6(5)**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction
in General
    106I(A) In General
       106k13.1 Actions by or Against Nonresidents, Personal Jurisdiction In; "Long-Arm" Jurisdiction
          106k13.6 Agents, Representatives, and Other Third Parties, Contacts and Activities of as Basis for Jurisdiction
             106k13.6(3) Jurisdiction of Agents, Representatives, or Other Third Parties Themselves
               106k13.6(5) k. Fiduciary duties in general; fiduciary shield. Most Cited Cases

    In accordance with the corporate shield doctrine, acts of a corporate employee performed in his corporate capacity do not form the basis for jurisdiction over the corporate employee in his individual capacity, and this applies also to a nonresident who acts in a representative capacity on behalf of a limited liability company; however, a nonresident corporate officer is subject to personal jurisdiction if the officer directed fraud or other intentional misconduct at parties in the State of Florida. West's F.S.A. § 48.193.

**[9] Courts 106 ⟾13.6(9)**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
    106I(A) In General
       106k13.1 Actions by or Against Nonresidents, Personal Jurisdiction In; " Long-Arm " Jurisdiction
          106k13.6 Agents, Representatives, and Other Third Parties, Contacts and Activities of as Basis for Jurisdiction
             106k13.6(9) k. Related or affiliated entities; parent and subsidiary. Most Cited Cases

    Plaintiff may establish personal jurisdiction of an upstream, nonresident parent of a resident subsidiary corporation in three ways: first, the plaintiff may show that the non-Florida parent company independently satisfies the test for jurisdiction under Florida's long-arm statutes; second, the plaintiff may establish facts that justify piercing the corporate veil; and third, the plaintiff may show that the parent exercises sufficient control over the subsidiary to render the subsidiary an agent or alter ego of the parent, though the amount of control exercised by the parent must be high and very significant. West's F.S.A. § 48.193.

**[10] Courts 106 ⟾13.6(8)**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
    106I(A) In General
       106k13.1 Actions by or Against Nonresidents, Personal Jurisdiction In; "Long-Arm" Jurisdiction
          106k13.6 Agents, Representatives, and Other Third Parties, Contacts and Activities of as Basis for Jurisdiction
             106k13.6(8) k. Shareholders, members, or other individual owners of entities. Most Cited Cases

    Nonresident individuals and trusts having indirect ownership interests in Florida nursing home did not have sufficient business activities or minimum contacts in Florida to be subject to specific personal jurisdiction in action brought by estate of deceased nursing home resident, alleging negligence, breach of fiduciary duty, and statutory violations relating to alleged deficiencies in resident's care at the home; although nonresident defendants had sig-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

98 So.3d 173, 37 Fla. L. Weekly D2157
(Cite as: 98 So.3d 173)

Page 4

nificant ownership interests in the nursing home, nothing about their financial interests in the nursing home was related in any way to estate's claims, and defendants did not have sufficient control over the day-to-day operations of the nursing home to establish an agency relationship. U.S.C.A. Const.Amend. 14; West's F.S.A. § 48.193(1)(a).

[11] Courts 106 ⟲ 13.6(8)

106 Courts
   106I Nature, Extent, and Exercise of Jurisdiction in General
      106I(A) In General
         106k13.1 Actions by or Against Nonresidents, Personal Jurisdiction In; "Long-Arm" Jurisdiction
            106k13.6 Agents, Representatives, and Other Third Parties, Contacts and Activities of as Basis for Jurisdiction
               106k13.6(8) k. Shareholders, members, or other individual owners of entities. Most Cited Cases

Nonresident individuals and trusts having indirect ownership interests in Florida nursing home were not engaged in "substantial and not isolated" activity in Florida so as to be subject to general personal jurisdiction in action brought by estate of deceased nursing home resident, alleging negligence, breach of fiduciary duty, and statutory violations relating to alleged deficiencies in resident's care at the home, where nonresident defendants were not engaged in the day-to-day operations of the home. West's F.S.A. § 48.193(2).

*175 Daniel E. Dias and Dante M. Skourellos of Mancuso & Dias, P.A., Tampa, for Appellants.

Isaac R. Ruiz–Carus of Wilkes & McHugh, P.A., Tampa, for Appellee.

WALLACE, Judge.
Upon consideration of the "Motion for Rehearing, Motion for Rehearing En Banc, and Motion for Certification" filed by Appellee on May 30, 2012,

IT IS ORDERED that the request for rehearing is granted. Accordingly, the opinion dated May 16, 2012, is withdrawn, and the attached opinion is substituted therefor.

The revised opinion—which does not affect the disposition of the case—reflects that the court considered and rejected the Appellee's assertion of long-arm jurisdiction over the Appellants under section 48.193(2), Florida Statutes (2010), as well as section 48.193(1)(a).

The Appellee's requests for rehearing en banc and for certification are denied. No further motions for rehearing will be entertained.

The Appellants, Harris Schwartzberg, Maxwell Stolzberg, and multiple trusts are among the defendants in nursing home litigation brought by the Appellee, Kim K. Knobloch, as the personal representative of the Estate of William Knobloch, deceased.*176 The Appellants challenge the circuit court's order denying their motions to dismiss for lack of personal jurisdiction.[FN1] Because Ms. Knobloch failed to establish any basis for personal jurisdiction of the Appellants in Florida, we reverse the circuit court's order.

    FN1. We have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(c)(i).

### I. INTRODUCTION
William J. Knobloch was a resident of a 185-bed skilled nursing facility known as "Palm Terrace of Lakeland," from January 24, 2004, until his discharge on January 1, 2010. In June 2010, Mr. Knobloch filed an action against the operator of the nursing home and others for alleged deficiencies in his care during his residence at the home. Mr. Knobloch alleged claims for negligence, breach of fiduciary duty, and violations of section 415.1111, Florida Statutes (2009). Mr. Knobloch died on October 17, 2010. Ms. Knobloch was appointed as the personal representative of his estate, and she was substituted as the plaintiff in the pending litigation.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

98 So.3d 173, 37 Fla. L. Weekly D2157
(Cite as: 98 So.3d 173)

In March 2011, Ms. Knobloch filed a second amended complaint that named the Appellants as defendants along with numerous other entities and individuals. Two of the Appellants, Harris Schwartzberg and Maxwell Stolzberg, are individuals who reside in the State of New York. The remaining Appellants are twenty trusts created and registered in the State of New York (the New York trusts). Mr. Schwartzberg, Mr. Stolzberg, and the New York trusts each filed a motion to dismiss the second amended complaint against them for lack of personal jurisdiction. The question we are called upon to decide is whether the Appellants—all of whom are nonresidents of Florida—had sufficient contacts with the subject of the litigation or the State of Florida to warrant Florida's exercise of personal jurisdiction over them.

## II. THE FACTS

During the period of Mr. Knobloch's residence at Palm Terrace of Lakeland, a group of related companies known as "the Schwartzberg Companies" had an interest in that nursing home and in sixteen other facilities in Florida. The Schwartzberg Companies structured the ownership and operation of these facilities in a complex web of limited liability companies, corporations, and trusts. We offer the following explanation of the relationship between the various Appellants and Palm Terrace of Lakeland.

Each of the seventeen facilities was operated by a separate entity. SA–Lakeland, LLC, held the license for and operated the nursing home known as "Palm Terrace of Lakeland." At the first tier of ownership, SA–Lakeland, LLC, had two parent companies. CHC–CLP Operator Holdings, LLC, owned a 99.5% interest in the subsidiary operating company; CHC–SPC Operator, Inc., owned the remaining .5% interest. Also at the first level, CHC–CLP Operator Holdings, LLC, owned 100% of CHC–SPC Operator, Inc.

At the second tier of ownership, SA–Master Operator Holdings, LLC, owned 99.5% of CHC–CLP Operator Holdings, LLC. Several of the New York trusts apparently owned the remaining .5%. Before a restructuring that occurred in August 2007, the ownership of CHC–CLP Operator Holdings, LLC, was divided equally among Mr. Schwartzberg and three of the New York trusts.

At the third tier, sixteen of the New York trusts owned SA–Master Operator Holdings, LLC. Thus all of the New York trusts apparently had an indirect interest *177 in SA–Lakeland, LLC, the operator of the nursing home, either through their ownership interest in its grandparent company, SA–PG Master Operator Holdings, LLC, or through their ownership interest in one of the parent companies, CHC–CLP Operator Holdings, LLC.[FN2]

FN2. The New York trusts also had an indirect ownership interest in New Surfside Administrators, LLC. We are unable to determine the role of New Surfside Administrators, LLC, from our record.

A separate entity managed the nursing home. Cypress Health Care Management Region III, LLC, acted as the management company for Palm Terrace of Lakeland. Cypress Health Care Holdings, LLC, owned 95% of the management company. Four of the New York trusts—HS National Trust # 1, JS National Trust, HS National Trust # 2, and Fam National Trust—had ownership interests in the management company and its parent. In addition to the management company, several other related entities furnished goods and services to the nursing home.

As previously noted, Mr. Schwartzberg owned a 25% interest in CHC–CLP Operator Holdings, LLC, the nursing home's parent company, until August 2007, when a restructuring occurred. Based on our limited record, it is impossible to state exactly the involvement of Mr. Schwartzberg and Mr. Stolzberg in this complex web of companies. However, both Mr. Schwartzberg and Mr. Stolzberg admittedly owned, either directly or indirectly, interests in several of the entities involved. They certainly had an indirect ownership interest in

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

98 So.3d 173, 37 Fla. L. Weekly D2157
(Cite as: 98 So.3d 173)

SA–Lakeland, LLC, the operating company for the nursing home. In addition, they seem to have served as managers of some of the limited liability companies.

### III. THE COMPLAINT AND THE AFFIDAVITS

In her second amended complaint, Ms. Knobloch alleged that each of the Appellants had

conducted and engaged in business activities within the State of Florida; engaged in substantial and not isolated activities within the State of Florida; and purposely [took advantage] of the privileges of the State of Florida, through ... ownership of, leasing of, operation of, management of, and/or consultation with nursing homes, including PALM TERRACE OF LAKELAND, within the State of Florida.

Based on such allegations, Ms. Knobloch asserted that each of the Appellants was subject to the jurisdiction of the Florida courts in accordance with section 48.193(1)(a), (2), Florida Statutes (2010).

[1] Section 48.193(1)(a) provides that any person, whether or not a citizen of Florida, is subject to the jurisdiction of this state's courts for any action arising out of "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Thus jurisdiction may be asserted upon nonresident persons or entities in accordance with the statute where the cause of action arises from that person's business activities in Florida, i.e., where "connexity" exists. See *White v. Pepsico, Inc.*, 568 So.2d 886, 889 n. 4 ( Fla.1990) ( " 'Connexity' is the term courts have adopted to mean a link between a cause of action and the activities of a defendant in the forum state.").

[2] If there is a basis for jurisdiction under section 48.193(1), the plaintiff must still establish that the nonresident defendant has sufficient minimum contacts with the State of Florida to satisfy

due process of law. See *178Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The test is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

[3][4] Section 48.193(2) provides that "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Section 48.193(2) "does not require connexity between a defendant's activities and the cause of action." *Camp Illahee Investors, Inc. v. Blackman*, 870 So.2d 80, 85 (Fla. 2d DCA 2003) (quoting *Woods v. Nova Cos. Belize Ltd.*, 739 So.2d 617, 620 (Fla. 4th DCA 1999)). And, "if the defendant's activities meet the requirements of this section, the due process requirement of minimum contacts is fulfilled." *Id.*

In this case, Mr. Schwartzberg and Mr. Stolzberg are residents of the State of New York. Ms. Knobloch does not contend that any of the trustees of the New York trusts are residents of the State of Florida. In her second amended complaint, Ms. Knobloch alleged that each of the trusts "is a New York entity." We interpret this allegation as an acknowledgment that the situs of the trusts is in New York. *Cf. Lampe v. Hoyne*, 652 So.2d 424, 426 (Fla. 2d DCA 1995) (holding that the plaintiff had not established a basis for jurisdiction in Florida over a nonresident trustee where it was not established that the situs of the trust was in Florida); *Miller v. Braunstein*, 549 So.2d 797, 797–98 (Fla. 5th DCA 1989) (same). Thus the Appellants have little, if any, connection with Florida other than their indirect interests in the nursing home's operating company and the interest of some of the New York trusts in the management company. That said,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

98 So.3d 173, 37 Fla. L. Weekly D2157
(Cite as: 98 So.3d 173)

the Appellants agree that Ms. Knobloch pleaded a basis under section 48.193 for service of process on the Appellants in New York.

[5] However, the Appellants contested the asserted basis for jurisdiction by supporting their motions to dismiss with affidavits asserting that they did not have the requisite contacts with Florida. "A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his position. The burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained." *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla.1989). If the affidavits can be harmonized, the court can resolve the jurisdiction issue based upon the undisputed facts. *Id.* at 502–03. If not, "the trial court [must] hold a limited evidentiary hearing in order to determine the jurisdiction issue." *Id.* at 503. The trial "court's decision must resolve (1) whether there are sufficient jurisdictional facts to bring the action within the long-arm statute, and (2) whether the nonresident defendant has sufficient minimum contacts with Florida to satisfy due process requirements." *Greystone Tribeca Acquisition, L.L.C. v. Ronstrom*, 863 So.2d 473, 475 (Fla. 2d DCA 2004) (citing *Venetian Salami*, 554 So.2d 499 and *Kin Yong Lung Indus. Co. v. Temple*, 816 So.2d 663 (Fla. 2d DCA 2002)).

The Appellants' affidavits state generally that they did not have any offices in Florida; did not employ anyone in Florida; and did not control, operate, manage, consult with, or supervise the activities of Palm Terrace of Lakeland. In response, Ms. Knobloch filed an opposing affidavit *179 prepared by Victoria Fierro, a Certified Public Accountant. Ms. Fierro did not base her affidavit on any direct knowledge of Palm Terrace of Lakeland and the Appellants. Instead, she relied for her information on various public records, including the nursing home's application for licensure, "controlling interest" affidavits, and cost reports.

In her affidavit, Ms. Fierro notes that in 2007

the Schwartzberg Companies sent a letter to the Agency for Health Care Administration (AHCA) stating, "[a]s you know, our companies *operate* 17 facilities in Florida under the 'Palm Garden' and 'Palm Terrace' trade names." Attached to that letter are several pages containing diagrams of the companies' labyrinthine organizational structure.[FN3] Based on the letter and the diagrams, Ms. Fierro opined that the New York Trusts "are the upstream 5% or greater controlling interests for the nursing home group that includes Palm Terrace of Lakeland."

> FN3. The letter and the diagrams are the source for much of the discussion concerning the structure of the ownership and operation of the nursing home and its related companies in part II of this opinion.

Ms. Fierro also noted that Mr. Schwartzberg was listed in a "2008 Medicaid Cost Report for Palm Terrace of Lakeland as a 45% owner of SA–Lakeland, LLC," the operating company for the nursing home, and as "a 25% owner of Cypress Administrative Services, LLC." Ms. Fierro described Cypress Administrative Services, LLC, as "a related party providing services to the nursing home with allowable costs in excess of $3,468,636." She attached a copy of the nursing home cost report to her affidavit.

In addition, Ms. Fierro attached a copy of a document filed with the Florida Secretary of State indicating that Mr. Schwartzberg is a member-manager of Medstar Consulting, LLC, a Delaware limited liability company authorized to transact business in Florida. She also noted that Mr. Schwartzberg had signed a $15,780 check to AHCA for the lease bond for another facility. Furthermore, Ms. Fierro reported that Mr. Schwartzberg is listed on a controlling interest affidavit submitted to AHCA in 2007 as having a 5% or greater interest in SA–Lakeland, LLC, the nursing home's operating company. Based on other available information, it appears that the information concerning Mr. Schwartzberg's interest in the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

98 So.3d 173, 37 Fla. L. Weekly D2157
(Cite as: 98 So.3d 173)

Page 8

operating company refers to indirect rather than direct ownership.

With regard to Mr. Stolzberg, Ms. Fierro noted that he was listed in the 2008 cost report for Palm Terrace of Lakeland as the sole member and manager of SA–Lakeland, LLC, the operating company. This information appears to conflict with other available information and Mr. Schwartzberg's reported 45% interest in the operating company. Ms. Fierro did not address this apparent inconsistency, and we are unable to resolve it.

Finally, Ms. Fierro attached to her affidavit a newspaper article that discussed the trend toward increasing complexity in the ownership structure of nursing homes, including the use of multilayered, single-purpose entities such as the ones involved in this case. Ms. Fierro explained that because of Congressional hearings and reports by the Government Accounting Office, Congress amended the Social Security Act to require more transparency in the reporting requirements for nursing homes. She attached a copy of the revised Social Security Act, Section 1124 (42 U.S.C. § 1320 – 3). The Appellants moved to strike this part of the affidavit and these *180 materials as hearsay, but the circuit court did not rule on their motion.

## IV. THE CIRCUIT COURT'S RULING

At the hearing on the Appellants' motions to dismiss, the parties did not offer any additional evidence and their presentations were limited to the arguments of Appellants' counsel. The circuit court inquired of Appellants' counsel whether the ownership of the seventeen Florida facilities had been structured to enable various nonresident individuals and entities to maintain operational and budgetary control over the facilities, to direct profits from the facilities upstream, but to avoid liability and financial responsibility for the consequences of their operations. The circuit court suggested that such circumstances might give rise to personal jurisdiction over the Appellants in Florida, and, ultimately, it denied the Appellants' motions to dismiss. This appeal followed.

## V. STANDARD OF REVIEW

[6][7] This court's standard of review on orders finding personal jurisdiction over a nonresident defendant is de novo. *Camp Illahee Investors, Inc. v. Blackman,* 870 So.2d 80, 83 (Fla. 2d DCA 2003). In addition, Florida's long arm statute must be strictly construed. *Id.*

## VI. DISCUSSION

After a thorough review of the record in this case, especially the affidavits filed by the parties, we reverse the circuit court's ruling denying the Appellants' motion to dismiss. However, we acknowledge that the experienced circuit judge displayed an astute grasp of current trends in the ownership structures of nursing homes and similar facilities. The era of the locally owned, "mom and pop" nursing facility is gone. Increasingly, private investment groups own large chains of nursing homes. Charles Duhigg, *At Many Homes, More Profit and Less Nursing,* N.Y. Times, Sept. 23, 2007, http:// www. nytimes. com/ 2007/ 09/ 23/ business/ 23 nursing. html. With the end of the locally owned nursing home, it has become common for nursing facilities to have complex ownership and management structures such as the one in this case. *See, e.g., LeRkovitz v. Wagner,* 291 F.Supp.2d 764, 767 (N.D.Ill.2003) (describing an ownership and management structure involving a number of levels), *aff'd,* 395 F.3d 773 (7th Cir.2005); *Salley v. Heartland–Charleston of Hanahan, SC, LLC,* 2010 WL 5136211 (D.S.C.2010) (addressing the question of personal jurisdiction of a sixth-tier parent company to the facility where the plaintiffs' decedent was a resident); *House v. 22 Tex. Servs., Inc.,* 60 F.Supp.2d 602 (S.D.Tex.1999) (describing a complex ownership and management structure established by a group that owned forty-nine nursing homes and assisted living facilities in Texas). These complex structures arise because the owners of multiple nursing homes and similar facilities have adopted the use of the single purpose entity (SPE) to minimize the various risks of their businesses.

In an instructive and informative article, two

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 9

98 So.3d 173, 37 Fla. L. Weekly D2157
(Cite as: 98 So.3d 173)

health care lawyers suggest that owners of nursing homes and similar facilities consider the use of SPEs for their ownership and operations to minimize business risk. Joseph E. Casson & Julia McMillen, *Protecting Nursing Home Companies: Limiting Liability Through Corporate Restructuring*, 36 J. Health L. 577 (Fall 2003). The authors provide several examples of this strategy:

[A]company could decide to restructure down to the individual facility level by forming real property SPEs to own each piece of real estate that is used as a nursing home, and by forming a corresponding*181 number of operating SPEs to lease and operate the nursing homes. Alternatively, a company could decide to subdivide its operations into subsidiaries that own and operate only a certain number of facilities each, based upon the level of risk the company is willing to accept. In addition, a company could elect to place all of its real estate in a real property SPE, but operate each facility through an operating SPE. In effect, any restructuring should be customized to the particularized needs of each company.

*Id.* at 579. According to the authors, the benefits of employing these strategies include containing exposure to risk to the facility involved, thereby avoiding the exposure of all of the facilities in the group to liability. *Id.* The risks to be minimized by these strategies include: (1) exclusion from the Medicare and Medicaid programs, (2) Medicare and Medicaid overpayment liability, (3) liability under the federal False Claims Act, and (4) liability for damages to residents in tort or under other theories. *Id.* at 580–85. Where these strategies are employed, the operating company may have minimal assets. If the operating company is effectively judgment-proof, an injured resident may find it difficult, if not impossible, to collect on a damages claim. *See* David Couch, *Corporate Neglect in Nursing Homes*, 44–SEP Trial 50, 53 (Sept. 2008); Yao O. Dinizulu & Jennifer Matta, *The Multi–Level Nursing Home Corporate Structure: Transparency, Accountability and Common Sense*, 15 No. 6 Andrews

Health Care Fraud Litig. Rep. 3 (Dec. 10, 2009); Duhigg, *At Many Homes; Mei Zhao & D. Rob Haley, Nursing Home Quality, Staffing, and Malpractice Paid–Losses*, 38 No. 1 J. Health Care Fin. (Aspen) 1, 7 (Fall 2011).

[8] For plaintiffs in nursing home litigation, basic principles of personal jurisdiction limit their ability to obtain jurisdiction of nonresident, upstream owners of nursing homes and the nonresident officers and employees of such entities. "Ownership of a resident subsidiary corporation by an out-of-state parent corporation, without more, has been repeatedly deemed insufficient to meet the requirements of section 48.193." *Res. Healthcare of Am., Inc. v. McKinney,* 940 So.2d 1139, 1143 ( Fla. 2d DCA 2006) (citing *Greystone Tribeca,* 863 So.2d at 476). The same rule applies to nonresident individual shareholders of corporations resident in Florida. *See Seabra v. Int'l Specialty Imps., Inc.,* 869 So.2d 732, 734 ( Fla. 4th DCA 2004); *Suroor v. First Inv. Corp.,* 700 So.2d 139, 141–42 ( Fla. 5th DCA 1997); *cf. Kitroser v. Hurt,* 85 So.3d 1084, 1090 ( Fla.2012) ("Where an individual, nonresident defendant commits negligent acts in Florida, whether on behalf of a corporate employer or not, the corporate shield doctrine does not operate as a bar to personal jurisdiction in Florida over the individual defendant."). Moreover, in accordance with the corporate shield doctrine, "acts of [a] corporate employee performed in [his] corporate capacity do not form the basis for jurisdiction over [the] corporate employee in his individual capacity." *Rensin v. State, Office of the Attorney General,* 18 So.3d 572, 574 ( Fla. 1st DCA 2009) (alterations in original) (quoting *Doe v. Thompson,* 620 So.2d 1004, 1006 ( Fla.1993)). The corporate shield doctrine also applies to a nonresident who acts in a representative capacity on behalf of a limited liability company. *Stomar, Inc. v. Lucky Seven Riverboat Co., L.L.C.,* 821 So.2d 1183, 1187 ( Fla. 4th DCA 2002). However, "a nonresident corporate officer is subject to personal jurisdiction if the officer directed 'fraud or other intentional misconduct' at parties in the State of Florida." *Rensin,* 18

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

98 So.3d 173, 37 Fla. L. Weekly D2157
(Cite as: 98 So.3d 173)

So.3d at 575 (citing *Doe*, 620 So.2d at 1006 n. 1).

* [9] The plaintiff may establish personal jurisdiction of the upstream, nonresident parent in three ways. First, the plaintiff may show that "the non-Florida parent company independently satisfies the test for jurisdiction under Florida's long-arm statutes." *Qualley v. Int'l Air Serv. Co.*, 595 So.2d 194, 196 ( Fla. 3d DCA 1992) (citing *Mac-Millan–Bloedel, Ltd. v. Canada*, 391 So.2d 749, 750 ( Fla. 5th DCA 1980)). Second, the plaintiff may establish facts that justify piercing the corporate veil. *See Salley*, 2010 WL 5136211, at *4; *House*, 60 F.Supp.2d at 608–13 (piercing the corporate veil of several upstream owners of a nursing home based on a strong factual showing by the plaintiff). *See generally, Dinizulu & Matta, The Multi–Level Nursing Home Corporate Structure* (discussing piercing the corporate veil as a means of imposing liability on the nursing home's lender, landowner, and management companies); John A. Pearce II, John J. O'Brien, & Derek A. Rapisarda, *Protecting Nursing Home Residents from Attacks on Their Ability to Recover Damages*, 61 Rutgers L. Rev. 705, 732–45 (Spring 2009) (discussing piercing the corporate veil in the context of nursing home litigation). Third, the plaintiff may show that the parent exercises sufficient control over the subsidiary to render the subsidiary an agent or alter ego of the parent, thus establishing jurisdiction.[FN4] *Enic, PLC v. F.F. South & Co.*, 870 So.2d 888, 891 (Fla. 5th DCA 2004). However, "[t]he amount of control exercised by the parent must be high and very significant." *Id.* (citing *State v. Am. Tobacco Co.*, 707 So.2d 851, 855 (Fla. 4th DCA 1998)); *see also Salley*, 2010 WL 5136211, at *4–5 (holding that an upstream, nonresident parent did not exercise sufficient control of its nursing home subsidiary to establish an agency relationship sufficient to support personal jurisdiction); *Extendicare, Inc. v. Estate of McGillen*, 957 So.2d 58, 64 (Fla. 5th DCA 2007) (holding that the plaintiff failed to offer evidence that the upstream, nonresident parent of a nursing home controlled its subsidiaries to the extent that an agency relationship existed that would

support long-arm jurisdiction).

FN4. Several commentators have referred to this theory in the context of nursing home litigation as "direct participant liability." Couch, *supra*, at 53; Dinizulu, *The Multi–Level Nursing Home Corporate Structure*; Michael J. Griffin, *Defense of Corporate Parents: Managing Direct Participant Liability Claims*, 52 No. 7 DRI For Def. 17 (July 2010).

[10][11] In this case, Ms. Knobloch established only that the Appellants have indirect ownership interests in the nursing home's operating and management companies. But nothing about the Appellants' financial interests in the nursing home is related in any way to Ms. Knobloch's claims. Ms. Knobloch has failed to establish any connexity between the Appellants' financial interests in the nursing home and the alleged abuse from which her claims arise. *See Camp Illahee Investors*, 870 So.2d at 85 ("By its terms, section 48.193(1) requires connexity between the defendant's activities and the cause of action."). Ms. Knobloch has also failed to show that the Appellants have sufficient minimum contacts with Florida to establish personal jurisdiction over them here. Thus Ms. Knobloch did not prove a basis for long-arm jurisdiction over the Appellants under section 48.193(1)(a). In addition, because the Appellants' only "activity" in Florida is their indirect ownership interests in the nursing home's operating and management companies and because, as discussed below, they are not engaged in the day-to-day operations of the nursing home, we conclude that Ms. Knobloch did not establish that the Appellants are engaged in substantial and not isolated activity in Florida. Accordingly, Ms. Knobloch *183 did not prove a basis for long-arm jurisdiction against the Appellants under section 48.193(2).

Ms. Knobloch argues that she has demonstrated that the Appellants have sufficient control over the day-to-day operations of the nursing home sufficient to establish an agency relationship. We disagree. Ms. Fierro's affidavit established nothing

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

98 So.3d 173, 37 Fla. L. Weekly D2157
(Cite as: 98 So.3d 173)

more than that the Appellants had significant own-
ership interests in the nursing home. As we have
noted, such ownership, without more, is insufficient
to establish personal jurisdiction over a nonresident
defendant. *Hilltopper Holding Corp. v. Estate of
Cutchin,* 955 So.2d 598, 603 (Fla. 2d DCA 2007);
*Extendicare,* 957 So.2d at 64; *see also
Schwartzberg v. Estate of Simoneau,* 77 So.3d 913,
914 (Fla. 1st DCA 2012) (reversing a circuit court's
order denying a motion to dismiss for lack of per-
sonal jurisdiction made by substantially the same
defendants as in this case).

### VII. CONCLUSION

The circuit court erred in finding that it had
personal jurisdiction of the Appellants. Accord-
ingly, we reverse the order under review and re-
mand with directions to grant the Appellants' mo-
tions to dismiss.

Reversed and remanded with directions.

CASANUEVA and LaROSE, JJ., Concur.

Fla.App. 2 Dist.,2012.
Schwartzberg v. Knobloch
98 So.3d 173, 37 Fla. L. Weekly D2157

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.